# CHARLESTON.

CLARK *v.* GORDON *et al.*

Submitted September 8, 1891.—Decided December 19, 1891.

1. OPTIONS—CONTRACT—AGENT—SPECIFIC PERFORMANCE.

G. being the owner of a tract of land conveyed the same to H. without consideration, stating at the time he did so that a party had an unjust demand against him, and that he made said conveyance so that he could get a fair settlement of said demand. G. remained in possession of said land and shortly thereafter contracted to sell the same to D. G., still remaining in possession of said land, induced D. to join him in executing an option on said land to a coal company, by the terms of which option D. was to have one third of the purchase-money. Said coal company having elected to take said land under said option, a short time thereafter G. contracted to sell said land to C. for three hundred dollars, said C. having been the attorney and agent of G. in making said option sale, and having full notice thereof; said C. claiming that he had been advised by the agent of said coal company, who acted for it in purchasing said land, that it had abandoned its said contract. Said C. at once sold said land to M. his son-in-law, who also had full notice of the contract aforesaid with said coal company, but claimed also that he had been told by said agent that said company had abandoned said contract. M. also claims that he paid C. four hundred and fifty dollars for said property. C. then procured H. to convey said land to M., as he claims, to save expense of deeds; G. still remaining in possession of said land, so far as the record discloses. In a suit brought by said coal company for specific performance of said contract, to which G., H., D., C. and M. were made parties defendant, H., in his answer, states that he paid no consideration for said property, but held it to protect it from said unjust demand against G., and really never owned it. *Held* that, in order

to show that said coal company had abandoned its contract for said land, it was necessary that C. and M. should prove, or it should appear in some way, that the agent of said company was acting within the scope of his authority when he informed them that such was the case.

2. OPTIONS—AGENT.

That C. having been the attorney and adviser of G. in making said option sale to said coal company and having full notice of said transaction as well as the manner in which H. held said land, he could not make a valid purchase thereof from G. that would be good against said company, and his son-in-law, M., being also fully cognizant of said transaction could not make a valid purchase thereof from C.

3. OPTIONS—FRAUDULENT CONVEYANCE—TITLE.

That H. having disclaimed any title to said land, and being merely the holder of said title for the purpose of hindering and delaying a creditor of G., and being merely the conduit through whom the title passed to M., said M. did not derive any better title thereby than he would have done if H. had conveyed to G., and G. to C., and C. to M.

4. OPTIONS—SPECIFIC PERFORMANCE.

Under the circumstances of this case, M. could not hold said land against the claims of said coal company, who are entitled to specific performance of their contract.

5. OPTIONS—EXECUTORY CONTRACT.

Where a party signs and seals a written proposal to sell a tract of land therein described for a consideration therein named, one half of the purchase-money to be paid in cash, and the remainder in nine months, the deed to be made when the cash-payment is made, subject to the condition that the party proposing to purchase shall have thirty day's option to elect whether he shall purchase or not, upon such election being made to take the property and notice to the proposer being given within said time, an executory contract was thus formed, with mutual obligations on the parties as in other contracts.

6. OPTIONS.

The obligation of such proposer to deliver such deed and the obligation of the holder of the option to pay the money are mutual and dependent, and are to be performed simultaneously. *Barrett* v. *McAllister*, 33 W. Va. 738 (11 S. E. Rep. 220.)

7. VENDOR AND VENDEE—TITLE—PURCHASE-MONEY.

A purchaser entitled to a good title need not pay purchase-money until he is tendered a good title.

*J. S. Clark* and *A. W. Reynolds* for appellants, cited 27 W. Va. 17; 7 Wait Act. & Def. c. 51, § 1; 21 W. Va. 516; Sto. Eq. Juris. § 1212; 16 Atl. Rep. 921; 5 Wait Act. &

Def. 679 ; Sto. Eq. Juris. 784 ; 32 W. Va. 277 ; Sto. Eq. Juris. §§ 777, 779 ; 25 Gratt. 195 ; 22 Gratt. 83 ; 128 Ill. 340 ; 3 S. E. Rep. 376 ; 26 W. Va. 451 ; 18 W. Va. 521 ; 26 W. Va. 447 ; 30 W. Va. 335 ; Code, c. 74, s. 9 ; 10 W. Va. 87 ; 1 Am. Lead. Cas. (5th Ed.) 37 ; 21 Ia. 205 ; 44 Ia. 642 ; 14 Mass. 136 ; 18 Pick. 136 ; 20 Pick. 49 ; 7 B. Mon. 11 ; 3 Conn. 450 ; 1 Rob. 131 ; Wait Fraud. Conv. § 369 ; 17 W. Va. 717.

*Johnston & Hale* and *Christian & Murphy* for appellees, cited 15 W. Va. 567 ; 18 W. Va. 755 ; 21 W. Va. 469 ; 4 Rand. 368 ; 23 W. Va. 522 ; 6 Ohio St. 52 ; 9 Pick. 93 ; 10 Yerg. 486 ; 1 Sto. Eq. § 371 ; 8 Leigh 510 ; 10 Leigh 321 ; 12 Leigh 427 ; 9 W. Va. 154 ; Id. 552 ; 24 W. Va. 730 ; 22 W. Va. 676 ; 10 Ohio 162 ; 1 Ohio 469 ; 5 Munf. 28 ; 4 Munf. 187 ; 5 Wait Act. & Def. 797 ; 2 Brook. 185 ; 25 W. Va. 470.

ENGLISH, JUDGE : .

This was a suit in equity brought in the Circuit Court of McDowell county on the 20th day of June, 1789, by E. W. Clark, S. F. Tyler, and H. M. Bell, trustees of the Flat Top Coal Land Association, lately known as the Flap Top Land Trust, plaintiffs, against Charles H. Gordon, Joshua Day, Hiram Christian, M. L. Murphy, and William Harmon defendants, for the purpose of enforcing the specific performance of an agreement for the sale of a tract of land said to contain one hundred acres.

The plaintiffs in their bill allege that on the 11th day of November, 1887, Charles H. Gordon and Joshua Day sold them a tract of land containing one hundred acres, more or less, lying on the left prong of Mill creek of Tug river, in McDowell county, W. Va., for which plaintiffs were to pay to the said Gordon the sum of three dollars per acre, and were to pay to the said Day the sum of one dollar and fifty cents per acre ;—the purchase-money was to be paid one half cash, and the residue in nine months, when a survey of the tract had been made ; that it was also provided in the contract of said sale that the plaintiffs were to have thirty days' option to determine whether or not they would accept the terms of the said purchase ;—that on the 4th day of December, 1887, within the said thirty days, the

plaintiffs gave due notice to the said Gordon and Day that they had elected to purchase on the terms aforesaid; that the said contract was in writing, and the said notice was indorsed thereon, and the service thereof was acknowledged by said Gordon and Day in writing upon said contract, which contract, with the indorsements aforesaid indorsed thereon, were exhibited with the plaintiff's bill;—that since the said sale the name of the said Flat Top Coal Land Association has been changed to the Flat Top Land Trust;—that the said Gordon, since the sale to plaintiffs, has made some sort of sale of the said one hundred acres of land to Hiram Christian, and that the said Hiram Christian has pretended to sell the same to the defendant William Harmon, and obtained a conveyance of same by said Gordon to said Harmon, and said Harmon has pretended to sell and convey the said land to the defendant M. L. Murphy, who is the son-in-law of said Hiram Christian, and the said Gordon has failed and refused to comply with the terms of his contract aforesaid with plaintiffs.

The plaintiffs also allege and charge that the defendant Gordon made the said pretended sale to said defendant Christian for the purpose of defrauding plaintiffs, and avoiding the effect of the contract aforesaid with the plaintiffs They also aver and charge that the pretended sale and conveyance from Christian and Gordon to Harmon and from said Harmon to said Murphy were made for the purpose of avoiding plaintiff's said contract; and the sale pretended to be made as aforesaid to said Harmon was made by said Christian, or by said Gordon, or both acting in conjunction with each other;—that the defendants Christian, Harmon and Murphy all had notice of the existence of said contract of the plaintiffs with said Gordon, and knew that said land had been sold to the plaintiffs prior to their pretended purchase, and they charge that the whole transaction between said Gordon, Christian, and Harmon and Murphy is a fraud upon their rights, and is void;—that the said contract has never been performed with them by said Gordon and Day;—that plaintiffs were ready and willing to perform their part of said contract, and that they are entitled to have a specific performance of the same; and they

pray that said pretended sales and conveyances to said Christian and Harmon and Murphy may be set aside, and that the said contract between plaintiffs and the said Gordon and Day be decreed to be specifically performed, and, if necessary, a commissioner be appointed for the purpose, with directions to convey the legal title of said lands to the plaintiffs.

The defendants Hiram Christian, M. L. Murphy, and Charles H. Gordon demurred to the plaintiffs' bill, and as I see no good reason why said demurrer should have been sustained, and it is not relied on by counsel in their argument, I conclude that it was only filed out of abundant caution.

The said Hiram Christian answered said bill, saying that he purchased the tract of land in the bill described, and paid the purchase-money therefor, and then sold the same to his co-defendant M. L. Murphy for a valuable consideration, and, instead of taking the deed directly to himself, had the same made to his co-defendant M. L. Murphy. He admits that one J. A. Welch, as the agent of the plaintiffs, had an optional or unilateral contract for said land before his purchase thereof, but at the same time he knew that the said plaintiffs had not only failed to comply with the said contract with his co-defendant Gordon by paying at the time fixed and provided for the cash payment provided for in and by the terms of said contract, but had abandoned said contract, and through the agent J. A. Welch had told and notified the said Gordon and defendant that they would not, on account of complications existing in the title of said Gordon, take the said land, and carry out their option contract with the said Gordon; and that, relying on the statement of the said plaintiffs made by their said agent, Welch, and being induced thereby, purchased the said land of the said Gordon, or paid him the full amount of the purchase-money; and, still relying on said statements and representations of the plaintiffs made as aforesaid, sold the said land to the said M. L. Murphy, received from him the purchase-money therefor, and had the legal title thereto conveyed to the said Murphy;—that he never would have purchased said land if he had not known that the plaintiffs had failed

to comply with their said contract with the said Gordon, and had not known that the plaintiffs had refused to carry the same out, and had abandoned the same;—that he was led and induced by these facts to make the said purchase, and is advised that now, at this late day, and after the plaintiffs had wholly failed to comply with their said contract by doing what they agreed to do, and after their declaration that they would not take the said land, and had abandoned the said contract, and thereby induced the defendant to believe that their contract with Gordon was ended, they will not be allowed to have specific performance of the said contract, and take the land away from the innocent vendees of defendant;—that to allow such, defendant is advised, would be to allow a gross fraud to be perpetrated on defendant and his vendee;—that plaintiffs stood by for nearly two years before bringing this suit without offering to comply with their contract, and now, after the large enhancement and advancement in the value of said tract of land, they come into a court of equity, and seek specific performance, and this, too, after their refusal and declared intention not to carry out said contract; that said tract is now worth twenty five dollars per acre;—that it was contracted to plaintiffs for the small and nominal sum of three dollars per acre, and defendant is advised that a court of equity, under the facts and circumstances of the case, will not enforce said contract, but will refuse to do so; and he prays that plaintiff's bill may be dismissed.

The defendant M. L. Murphy also answered said bill, admitting the conveyance of said tract of land to himself by his co-defendant Harmon, and exhibited with his answer certified copies of the deeds from Gordon to Harmon, Harmon to said Murphy, Devine to Gordon, and the contract between Gordon and Devine; and says that as to the contract set up and alleged in the bill as having been made November 11, 1887, between the plaintiffs and his co-defendant Charles H. Gordon, in relation to the sale and purchase of the tract of land aforesaid, he knows nothing, and denies that the said plaintiffs ever purchased said land, or paid for the same, or ever had any equity therein or thereto of any character whatever. He also denies notice of

said contract until the institution of said suit, which was long after he had paid the purchase-money, obtained a conveyance therefor, and was put in possession thereof by his vendor. He alleges that he paid the purchase-money, received his deed, and took possession of said land before he ever heard of the claims asserted in the bill; and he denies all charges of fraud and bad faith, so far as made by the plaintiffs in their bill; and alleges that at the time said optional contract was made between said J. A. Welch and Charles H. Gordon said Gordon had no interest in said land, legal or equitable; that the said plaintiffs failed and refused to pay said cash payment within the time fixed by the contract, and refused to make or have made a survey of said land, and wholly abandoned said contract, and refused to take said land; and he denies that the plaintiffs have any right to said land, or any equity therein *etc.* Charles H. Gordon also answered said bill, admitting the execution of said option, but says the plaintiffs, when they elected to take said land, were to pay him one half the purchase-money in cash, and the residue in nine months from date of said cash payment, the deed to be made when said cash payment was made.

He admits that notice was given him that plaintiffs had elected to take the land, and supposed, of course, they then and there would pay him the cash payment provided for in the option; but he avers that although he demanded said cash payment on the 4th of December, 1887, through his agent H. Christian, yet said Welch, agent as aforesaid, declined and refused to pay the same, and went away, which was a short time after respondent had signed the acceptance of said notice, fully believing when he signed it said cash payment would be made in accordance with the terms of said option, and he signed said notice with that understanding and no other; that he several times through his agent H. Christian demanded of the plaintiffs said cash payment, but got no reply until in March, 1888, he was informed, through the said Christian, who was then acting as his agent, that the plaintiffs, through their agent J. A. Welch, had declined to take said land on account of some supposed difficulty attending the title; and that acting

upon said information, and fully believing that the plaintiffs did not intend to take said land and pay for it, he sold the same to said Christian, who sold the same to the said Murphy, and respondent had the legal title conveyed to said Murphy.

He denies the right of plaintiffs to have performance of said contract; he denies that there was any contract or consideration for such contract, or mutuality therein, and insists that the said contract should not be enforced against him, not only on account of the matters above stated, and on account of uncertainty in the contract, but on account of the abandonment of said contract by the plaintiffs, and on account of their conduct and representations in the premises, by which respondent was led to change his situation, and to place himself in a position in which he can not be put *in statu quo;* and he relies on and pleads the statute of frauds in bar of the plaintiffs' suit.

He avers that, at the time defendant executed said option agreement, the legal title to his land was outstanding in William Harmon, and, if the plaintiffs had complied with it on their part, he was ready to comply with it on his part, and he would have procured the said Harmon to convey the legal title to plaintiffs in said land. He denies that he has been guilty of any fraud, bad faith, or improper conduct in the transaction, and asks that the bill be dimissed.

The defendant, William Harmon, also answered the plaintiffs' bill, admitting that Charles H. Gordon conveyed the land in controversy to him; stating to him that John H. Devine had an unjust demand against him (Gordon) and that he could not get a fair settlement with said Devine, and desired to convey said tract of land to respondent, who he desired should hold the legal title to the said land, so that said Gordon's wife and children would be assured of the benefit of a living out of it; that respondent paid nothing for it, but took said deed from Gordon, and had it recorded, and paid the recording fees to the clerk, which fees were paid back to him by said Gordon; that he paid no taxes on said land, and never really owned it, and that upon said Gordon's request he either conveyed the land back to Gordon, or by his direction conveyed it to said

Murphy; that he had no interest in the transaction, and did not charge his memory as to whom the deed was made, but it is certain it was made by the directions of said Gordon, and this ended his connection with said land, and he disclaims any intentional wrong in the matter, and submits that, whatever may be the result, he should not be subjected to any costs.

At the October term, 1890, of said Circuit Court, said cause was heard upon bill, exhibits, demurrers, and separate answers of the defendants H. Christian, Charles Gordon, and M. L. Murphy, with the exhibits therewith, and upon replication to each of said answers, and the answer of William Harmon upon the orders therein made and depositions of witnesses; upon consideration whereof the plaintiffs' bill was dismissed, with costs, and the plaintiffs applied for and obtained this appeal.

There can be no question that a contract was made between Charles H. Gordon and Joshua Day on the one part, and E. W. Clark, S. F. Tyler, and H. M. Bell, trustees of the Flat Top Land Trust Company, whereby said Gordon agreed to sell said trustees a tract of land containing one hundred acres, lying in McDowell county, W. Va., on the left prong of Mill creek of Tug river, and the vendees were to pay therefor three dollars per acre for the interest of Charles H. Gordon and one dollar and fifty cents per acre for the interest of Joshua Day therein, which, if the tract contained one hundred acres, would aggregate four hundred and fifty dollars for the tract. Upon the first payment (that is, one half cash) the said Gordon and Day agreed to make, or cause to be made, to said trustees a deed to said tract of land, with covenants of general warranty, and free from all incumbrances, and the remainder of the purchase-money was to be paid in nine months. This writing was signed and sealed by said Gordon and Day, and was subject to the following condition, to wit, that the said trustees should have thirty days' option to elect whether they should purchase or not.

Said agreement bore date on the 11th day of November, 1887, and on the 4th day of December, 1887, the following indorsements were made on said agreement: "Messrs.

Charles Gordon and Joshua Day please take notice that we have elected to take the land mentioned in the foregoing option dated the 11th day of November, 1887, upon the terms and conditions therein stated,"—which was signed, "E. W. Clark, S. F. Tyler, H. M. Bell, Trustees" *etc.*, "Flat Top Land Trust;" also there was this further indorsement: "We hereby accept service of the above notice, and will comply with the terms of the foregoing option, and will convey the same, with covenants of general warranty of title and freedom from incumbrances, and in which our wives shall unite; at which time the purchase-money is to be paid as to the cash payment, and the residue to be secured agreeably to the terms stated in the foregoing option, this 4th day of December, 1887. [Signed.] CHARLES H. GORDON, JOSHUA DAY."

Notice having been given in this manner by said trustee that they elected to take the land upon the terms and conditions therein stated within the period therein fixed, to wit, thirty days, and said Gordon and Day having accepted said notice in writing in the language above quoted, an executory contract was thus formed, with mutual obligations on the parties thereto.

In the cases of *Watson* v. *Coast*, and *Swearingen* v. *Watson, supra,* p. 463 (14 S. E. Rep. 249) which were heard together at the present term, and which are not yet officially reported, this Court held (first point of syllabus) that "where a written proposal for the sale of land, sometimes called an 'option' is dependent merely upon acceptance within a fixed time, upon such acceptance and notice of it to the proposer within the time an executory contract was thus formed, with mutual obligations on the parties, as in other contracts."

In the case of *Barrett* v. *McAllister*, 33 W. Va. 738 (11 S. E. Rep. 220) this Court held (p't 3 of syllabus) that "the obligation of such proposer to deliver such deed, and the obligation of the holder of the option to pay the money, are mutual and dependent, and are to be performed simultaneously." And in the cases of *Watson* v. *Coast* and *Swearingen* v. *Watson, supra,* this Court held (p't 6 of syllabus) that "a purchaser entitled to good title need not pay

purchase-money until he gets good title. If he decline to receive a deed and pay purchase-money, alleging defect of title on grounds plausible enough to cause a prudent man to hesitate, though turning out to constitute no defect, this will not defeat his right to specific performance."

Now, let us look for a moment at the circumstances of this case. At the time said agreement was signed, on the 11th day of November, 1887, a portion of the title to said one hundred acres of land was vested in William Harmon, and so remained until the 13th of March, 1888. When said Harmon and his wife conveyed it to M. L. Murphy, Joshua Day had some interest in the land—what was the extent thereof does not appear, although he is named as a party to the agreement for the sale of the land, signing and sealing said agreement, and also signing the acceptance of notice given by said trustees that they had elected to take said land; and said Joshua Day in his deposition filed in the cause, in answer to question five, in which he was asked, "By way of refreshing your recollection, I will ask you to state whether or not you ever advised the said M. L. Murphy not to buy the land in controversy on account of the plaintiffs' claiming it," he answered, "I can't say that I did until after I had bought the land." From this it would appear that he had contracted in some way for the land. So it would appear that Harmon held the title, and Day had contracted for the land, and although said Charles H. Gordon neither held the legal title, nor had taken any steps to have it reconveyed to him by Harmon, and never did get a reconveyance of said land from said Harmon, yet he says, in his answer to the bill, that he supposed, of course, said trustees would pay him the cash payment provided for by said option at the time they elected to take said land.

It also appears on the face of said option that there was a deed of trust on said land in favor of Mrs. Clements to secure the payment of eighty three dollars, and no steps appear to have been taken by said Gordon to have a release of said trust prepared, in order that the land might be free from incumbrances, in accordance with the terms of said contract; so that the said Gordon was in no condition to demand the payment of the cash payment at the time

the election was made to take said property, and, as we have seen in *Swearingen* v. *Watson, supra,* "a purchaser entitled to good title need not pay purchase-money until he gets good title."

It does not appear in the record that said purchasers were insolvent, and, they having elected to purchase said property at the stipulated price, we can see no good reason why the said Charles H. Gordon, if he wished to enforce said contract, could not have tendered a deed with his bill, and compelled specific performance of said contract. He, however, preferred to sell it to H. Christian for one hundred and fifty dollars less than he had sold to said trustees, and said Christian procured the defendant Harmon to convey the land to M. L. Murphy, Christian's son-in-law, who claims to be an innocent purchaser; but Hiram Christian himself, in his deposition, when asked on cross-examination, "Then the defendant Murphy knew of the said contract (meaning the option) when you sold him said land?" answered, "I know he did;" and said Murphy in his deposition shows that he knew of said contract before he claims to have purchased said land, for he swears in his deposition as follows: "I asked Captain Welch, if the company was going to take the Gordon land. He said, 'No,' he did not think that they would; that he was positive they would not, if I do not mistake; that it was worth the land to clear up the title. This was before I bought the land in controversy."

So there can be no question but that the said Murphy purchased with full notice of this contract between Gordon and Day and said trustees, and we may ask, with propriety, what became of Day's interest when Christian bought of Gordon and sold to his son-in-law Murphy?

There is a fact developed in the deposition of H. Christian which may to some extent answer the question why said Charles H. Gordon did not file a bill to enforce the specific execution of his contract, and collect said purchase-money from said company, and that is that between the 11th day of November, 1887, and the 20th day of June, 1889, about twenty months, said land advanced from four dollars and fifty cents to twenty dollars per acre in value.

Christian was his attorney and confidential agent, and appears to have understood the whole matter, and in his deposition he says: "I sold the land to the defendant Murphy for four hundred and fifty dollars cash (although he only paid three hundred dollars for it, and the deed from Harmon to Murphy only recites a consideration of two hundred dollars) which sum he paid, and directed the title to be made from William Harmon, to whom the defendant had conveyed the land in controversy, to the defendant M. L. Murphy."

Again he states that he met Capt. Welch, who called his attention to the fact that the plaintiffs were very anxious to settle up the matter with Mr. Gordon; that he replied that Gordon had no interest whatever in the matter. He also says: "I again told said Welch, Mr. Gordon had nothing to do with it; that the matter could not be settled unless the company settled it with him by executing the contract on their part, and taking the deed from the defendant Murphy for the land."

And he further says: "The reason that I assumed to settle the matter with the company, after having sold it to defendant Murphy, was from the fact that he always advised him in all his trading and business transactions, and he did whatever he advised him to do."

This clearly shows that, although the land was in Murphy's name, it was controlled by said Christian to the same extent it was when it was in Harmon's name; and it appears from the evidence that said Charles H. Gordon was in possession of said tract of land at the date of said option, and, so far as the record discloses, he still remains in possession, and Harmon in his answer disclaimed any ownership in the land.

The defendants, however, claim that subsequent to the election on the part of said trustees to take said land, notice of which determination on their part was given and accepted with more than usual formality in similar transactions, said trustees, through their agent Welch, abandoned said contract, and, in order to show that said purchasers had abandoned said contract, they rely upon declarations made by said J. A. Welch to H. Christian, M. L. Murphy, and

George W. Lambert. Said Lambert says he asked Mr. Welch if he was going to take the Gordon land. He said not. He said the title was in such a condition that he did not think they could get it straightened up, or something to that amount; and on cross-examination he said : "Well, from his conversation, I gathered from him that they would take, or would have taken, his land if Mr. Gordon could have made them a proper deed for it; and again he said they were not going to take the land; that the title was in such a condition that it was worth the land to clear it up ; and I thought, from his conversation, that they had declined to take the land entirely;" and the witness Murphy says Capt. Welch told him he did not think they would take the land ; that he was positive they would not; "if I don't mistake, that it was worth the land to clear up the title; this was before I bought the land in controversy;" and H. Christian swears that Welch said to him : "You can say to Mr. Gordon that the company had declined to take his land; that the title was so damnably tangled up that the company had decided that the land was not worth clearing up the title" etc.

These were all separate conversations, and said Christian says that afterwards, during the latter part of the following summer, he met Capt. Welch, who called his attention to the fact that the plaintiffs were anxious to settle up the matter with Gordon. But the conversation detailed by the witness Murphy was less than three months after said contract was formally accepted, and he fixes the date in his deposition in February, 1887, intending I suppose, February, 1888, and the deed from Harmon to him bears date March 13, 1888 ; and it appears somewhat singular that so much particularity was observed by Welch in giving notice of the election on the part of the company to take the property, and that subsequently, in the summer, he should express anxiety to have the matter settled up with Gordon, and that so shortly after said election was made, and in the mean time, he should tell Christian, Murphy, and Lambert that they were not going to take the land, and then Welch in his deposition gives a positive and unequivocal denial of having made any such representations to any person.

Let the facts be, however, as they may, with reference to these conversations and representations, the question presented to us for determination is, what is the effect of the representations attributed to said Welch, if it be true that they were made precisely as stated by Christian, Murphy, and Lambert? · In order that they should be binding upon said company, and constitute a waiver and abandonment of their rights under said contract, it was incumbent upon the defendants in said suit to show that Welch, at the time he made these representations, was not only the agent of the company, but in making such representations was acting within the scope of his authority. The authority to obtain options and to make contracts for the purchase of lands is very different from the power to sell and convey or to waive and abandon rights with reference to real estate, which have already been acquired.

Story, Ag. § 126, says: "Before quitting this subject of the nature and extent of the authority of agents, it seems proper to refer again to what has been already incidentally stated—the distinction commonly taken between the case of a general agent and that of a special agent, the former being appointed to act in his principal's affairs generally, and the latter to act concerning some particular object. In the former case the principal will be bound by the acts of his agent within the scope of the general authority conferred on him, although he violates by those acts his private instructions and directions, which are given to him by the principal, limiting, qualifying, suspending, or prohibiting the exercise of such authority under particular circumstances. In the latter case, if the agent exceeds the special and limited authority conferred on him, the principal is not bound by his acts, but· they become mere nullities, so far as he is concerned; unless, indeed, he has held him out as possessing a more enlarged authority."

And in section 165 the author says: "In the next place, let us consider what in other respects will be held to be good execution of the authority; and here it may be laid down as a general rule that, in order to bind the principal, (supposing the instrument to be in other respects properly executed) the act done must be within the scope of the au-

thority committed to the agent; in other words, his authority or commission must be punctiliously and properly pursued, and its limitations and extent duly observed, although circumstantial variance in its execution will not defeat it."

Also in note 1 to section 49 we find: "It has been held that the authority of an agent to make a contract for the sale of real estate need not be under seal; but if the purchaser relies upon such authority, and seeks to enforce the contract, the proof to establish the power of the agent must be clear, certain and specific.

In the case of *Curry* v. *Hale*, 15 W. Va. 867, p't 2 of syllabus, this Court held that "where a person deals with an agent it is his duty to ascertain the extent of the agency—he deals with him at his own risk; the law presumes him to know the limit of the agent's power, and, if the agent exceeds his authority, the contract will not bind the principal, but will bind the agent."

The evidence in this case shows that J. A. Welch was employed by the company, and acting as its agent in obtaining options and purchasing lands in McDowell county. The witness George W. Lambert states that he was a justice, and was with Capt. Welch a good deal, and took the acknowledgment of a good many of their deeds; but no witness in the cause states that said Welch ever sold any land for said company, or in any manner released any of the rights of said company which it had acquired by contract, and no witness states that his authority as such agent extended that far. It does not appear that he had a power of attorney authorizing him to convey; neither does it appear that his agency was a general one. J. A. Welch was on the witness stand, and the defendants failed to prove the extent of his agency or his authority to waive or abandon said contract; neither did they prove it in any other manner, although the burden of proof was on them to show such agency to establish that said contract was abandoned by the company, because said Welch may very well have had power and authority to purchase lands for said company, and no power whatever to alienate or abandon rights which they had acquired by reason of contracts which had been closed, and under which mutual rights and obligations

had arisen, and, having failed to show the authority of said Welch to abandon said contract, it still remains in full force and effect.

So far as the claim asserted by the defendant M. L. Murphy is concerned, that he was an innocent purchaser of the land, without notice, as we have shown it appears, both from the evidence of Christian and Murphy himself, that he (Murphy) was fully cognizant of the contract between Gordon and Day and said trustees when the land was conveyed to him, and Harmon in his answer does not claim he paid anything for the land, or that he owned the land; and Welch states in his deposition that Christian (who Gordon says was acting for him) told him that the conveyance to Harmon was without consideration, and his recollection was that he said that "Gordon's title could be made good by getting Harmon to join in the deed." The defendant Harmon, in his answer, says he paid nothing for said land, but that C. H. Gordon told him that one John H. Devine had an unjust demand against him, and that he (said Gordon) could not get a fair settlement with said Devine, and that he desired to convey the said tract of land to him (Harmon) who should hold the legal title for said Gordon, so that Gordon's wife and children would be assured a living out of it; and, while these admissions might not be good against his co-defendants, they would certainly be good against him. Christian was fully cognizant of the manner in which Harmon held said land, and told Welch that Gordon could have Harmon to convey it.

Christian purchased said land knowing these facts, and Harmon conveyed the land to Murphy, his son-in-law, who also had notice of all of the facts, including the contract with the plaintiffs. It must be remembered that Murphy claims that he purchased said land from Christian, his father-in-law. It is true, Christian says that to save expense he directed Harmon to convey the land to Murphy; but it is also true that Murphy made his contract and derived his rights, if any he acquired, from Christian, who knew all about the manner in which Harmon was holding the title.

Another question which presents itself is whether the plaintiffs have shown that diligence which the law requires

to entitle them to call for specific performance of said contract. To determine this question, we must examine the facts disclosed by the record in reference thereto, and in so doing we find that the contract was closed between the parties thereto on the 4th day of December, 1887 ; and without taking any steps whatever to recover the title from Harmon, or to be in readiness to tender a deed for said land, said Gordon, on the 13th of March, 1888, sold said land to Christian; and Christian says that some time towards the latter part of the summer or first of the fall he met Welch, who called his attention to the fact that the plaintiffs were very anxious to settle up the matter with Mr. Gordon. The plaintiffs brought their suit on the 20th of June, 1889, which was about fifteen months after Gordon sold said land to Christian, and about nine months after Welch told Christian the company were very anxious to have the matter settled with Gordon.

Waterman, in his valuable work on Specific Performance, (section 475, p. 663) says : "Laches of the vendee, depriving him of the right to insist upon the contract of sale, may consist simply in neglecting to make his payments, or to fulfill some other essential condition, or in not only failing for a long period to fulfill on his part, but by lying by and seeing the property sold to a third person, or in neglecting to file a bill to enforce the contract against the vendor.

The usual maxim is that a party seeking specific performance must show himself ready, desirous, prompt, and eager to perform the contract. Where, in a contract for the conveyance of land, no time is fixed for payment and delivery of the deed, payment must be made within a reasonable time or on request. The delay of the purchaser without excuse, which will preclude a decree for specific performance in his behalf, may, as we have seen, be years or months, according to the circumstances of the particular case."

We, however, do not think that, under the circumstances attending this case, the delay of the plaintiffs has been such as to bar their right to a specific performance of the alleged contract. We are of opinion, however, that said Christian, purchasing said land, as he claims he did, with

full knowledge of all the circumstances, assisted said Gordon in perpetrating a fraud upon the rights of said trustees who had purchased said land, and acquired no rights by his pretended contract with Gordon for the purchase of said land; and, such being the case, his son-in-law, Murphy, with like notice, could acquire nothing by his purchase from him.

We are therefore of opinion that the plaintiffs are entitled to the relief prayed for in their bill, but, before that can be granted, they must pay the purchase-money, with its interest, into court, so that it may be distributed to those who may be found to be entitled thereto; and, that being done, the court will then direct M. L. Murphy to convey the same by deed, with covenants of special warranty, within a reasonable time, to the plaintiffs, and, upon his failure so to do, to cause the same to be done by a commissioner appointed for that purpose; and that the said Gordon shall unite in said deed, with a covenant of general warranty, or execute a separate deed to the plaintiffs, with like covenants, and in default thereof, within a reasonable time to be fixed by the court, that the same be directed to be done on his behalf by a commissioner appointed by the Court for that purpose; and if the wife of said Gordon is unwilling to join in said deed, and the plaintiffs are unwilling to take the deed without the wife joining therein, as required by said contract of sale, that then said cause be dismissed, without prejudice to any suit at law the plaintiffs may be advised to bring against said Gordon and Day upon said contract; and the decree complained of is reversed, and the cause is remanded to the Circuit Court of McDowell county for further proceedings to be had therein, with costs to the appellants.

REVERSED.   REMANDED.