## WOOD v. DESKINS et al.

(Circuit Court of Appeals, Fourth Circuit. November 15, 1905.)

### No. 579.

1. **COURTS—FEDERAL JURISDICTION—ALIGNMENT OF PARTIES.**

    Where there was no controversy between one of the joint vendors in a contract for the sale of lands and the purchaser, but there was a dispute between her and the other vendors as to her share of the purchase money and the amount she should contribute toward clearing the title, and also between such other vendors and the purchaser with respect to taxes, interest, and other matters affecting the amount due under the contract which resulted in a suit by them for specific performance, the said vendor, who refused to join in such suit, was properly made a defendant, and cannot be aligned as a complainant in interest to defeat the jurisdiction of a federal court therein because of the fact that she was a citizen of the same state as the purchaser, although she was necessarily given a decree against him for the share of the purchase money to which the court determined she was entitled.

2. **VENDOR AND PURCHASER—DELAY IN PERFECTING TITLE—LIABILITY OF PURCHASER FOR INTEREST.**

    Where a contract for the sale of a tract of lands, consisting chiefly of wild mountain land having only a prospective value on account of the timber thereon, required the vendors to make a clear title contemporaneously with the payment of the purchase money, which they were unable to do for a number of years, owing to litigation, the fact that the purchaser, who had already advanced a large part of the purchase price, was compelled to take possession of the lands, which had become vacant, to protect them from trespassers, did not render him liable for interest on the unpaid purchase money, where it was shown that the taxes which he paid in the meantime greatly exceeded the income derived from the land.

**3. SAME—TAXES PAID BY PURCHASER IN POSSESSION.**

A purchaser of lands under a contract, who took possession, although the sale had not been consummated, owing to delay caused by the inability of the vendors to perfect their title, is not entitled to credit on the purchase money for taxes paid pending such consummation, even though the income from the land was insufficient to pay such taxes.

Appeal from Circuit Court of the United States for the Southern District of West Virginia, at Charleston.

This is a suit in equity by vendors of land against the vendee to enforce the specific performance of the contract of sale and the payment of the balance of the purchase money. The contract was made April 15, 1889, between William H. Deskins, L. S. Deskins and his wife, and Anne Blackham and her husband, William Blackham, and Isabella Deskins, wife of James Deskins, all of the first part, and Stuart Wood, of the second part. By the contract the parties of the first part sold to Stuart Wood all the lands in Logan county, W. Va., on Miller's creek, formerly owned by James Deskins, containing 5,185 acres, more or less, at $4 per acre; also a tract adjoining near the mouth of Miller's creek containing from 150 to 200 acres at $20 per acre. Wood was to have both of said tracts surveyed so as to ascertain the acreage by May 15, 1889, and the title thereto was to be perfected by the parties of the first part on or before the said May 15, 1889, and if the title to the 150 to 200 acres could not be perfected by that time it was to be perfected within a reasonable time thereafter. The contract then recites that Wood had paid $1,000 on April 12th, and on April 15th an additional $2,000, on account of purchase price, and, subject to the provisions of the contract, was to pay the balance of the purchase money on May 15, 1889. The contract then provides that, if there should be any delay in perfecting title to the 150 to 200 acre tract at the time specified, reasonable additional time should be given to perfect the same before payment of the purchase money on that tract; but, in the words of the contract, "the payment of the balance of the purchase money on said 5,185-acre tract shall be made on said 15th day of May if the survey is then completed, and, if not completed, then shall be paid when the said survey is completed, which shall be completed as soon thereafter as it can by pushing the same with all reasonable dispatch. The settlement for said lands under this contract shall be made within five days after the completion of said survey at the First National Bank of Huntington, W. Va. If upon the delivery of such deed as hereinafter provided for said land or for the boundary of 5,185 acres (if the title to the other is not then perfected) to said party of the second part, or the same be ready for delivery at the place of settlement above specified and the balance of said purchase money is not then paid, this contract shall be void, and $1,000, part of said money already paid, shall be forfeited to the parties of the first part. And upon payment of the balance of the purchase money by said Stuart Wood to the said parties, then the said parties of the first part shall deliver a deed conveying said land with covenants of general warranty, free from all incumbrances or defects of title, including the release of the right of dower of the wife of James Deskins. A certificate of the clerk of the county court of Logan county showing the release of the liens against said land shall be procured, and, if not, then the party of the second part shall retain sufficient of the purchase money to satisfy the liens against said land appearing on the records of said county. Possession of said land shall be given on the 1st of March, 1890, but the parties of the second part shall have the right of ingress and egress for any purpose whatever; but if by reason thereof any damage should be done to the possession, the same shall be paid by said party of the second part, and while the said land is the possession of the said parties of the first part or their tenants proper care shall be taken of the premises."

Wood proceeded without delay to have the land surveyed and the surveys were completed in the latter part of June, 1889. In the meantime, before the survey was finished, a suit was entered in the circuit court of Logan county, W. Va., by Clay and Headley, attacking a sale by Special Commissioner Shumate to W. H. Deskins, by which he acquired title to the 5,185-acre tract, as fraudulent and void. Stuart Wood was made a party defendant. This suit

was proceeded with and the Logan county court pronounced a decree setting aside the judicial sale by which W. H. Deskins acquired title. The decree was entered October 19, 1889, and on March 18, 1891, W. H. Deskins appealed to the Supreme Court of West Virginia, and that court, at its April term, 1892, reversed the decision of the circuit court of Logan county and dismissed the bill. The said Clay and Headley, after the suit in the Logan county court had been finally decided against them, on December, 1892, entered another suit in equity in the United States Circuit Court for the District of West Virginia, against L. S. Deskins, W. H. Deskins, William Blackham, Anne E. Blackham, and Stuart Wood, praying a decree requiring Wood to pay the balance of purchase money for the 5,185-acre tract of land to Clay and Headley, and obtained a restraining order enjoining Wood from paying the balance of the purchase money to the extent of $7,240, which the complainants alleged belonged to them. On December 6, 1893, a decree was entered dissolving the injunction and dismissing the bill. An appeal was allowed upon giving bond for costs and damages, and the decree of the circuit court was affirmed by this court on October 2, 1894. It further appears that the 5,185-acre tract had been forfeited for the nonpayment of the taxes of 1885, and sold for said nonpayment and purchased by the sheriff for the state, and not redeemed within the time prescribed. Upon a bill filed to set aside the forfeiture upon the ground that the taxes for 1885 had been actually paid, a decree was entered January 15, 1897, annulling and setting aside the sale and forfeiture of the land. The land had been acquired by W. H. Deskins at a judicial sale made by W. K. Shumate, special commissioner, in a proceeding by Patton Bros. against L. S. Deskins and others; but it appears that no deed was executed by W. K. Shumate, commissioner, to William H. Deskins, until August 3, 1897. There were some judgments of record which were liens on the land, amounting to between $3,000 and $4,000, which Wood acquired and was entitled to deduct from the purchase money.

On July 6, 1889, Stuart Wood paid on account of the purchase money $8,000 and took the following receipt:

"Received July 6, 1889, of Stuart Wood, eight thousand dollars on account of purchase money on lands described in a certain contract of sale. * * * The balance to be paid and receipted for by me at a reasonable time after the disposition of the suit of Clay & Headley v. Deskins et al., and when the liens are removed from the land. The back taxes are to be paid by me out of the above amount. L. S. Deskins. [Seal.]"

On the same day Wood paid $2,000 to Mrs. Blackham, taking the following receipt:

"Received Logan, C. H., July 6, 1889, of Stuart Wood, his check for two thousand dollars on account of the purchase money coming to Anne E. Blackham, for her interest intended to be conveyed to said Wood in a certain contract for land on Miller's Creek. * * * The balance of the purchase money to be paid to and be receipted for by me at a reasonable time after the disposition of the suit of Clay & Headley v. Deskins et al., and when the liens are removed from the land. Anne E. Blackham, [Seal]
"By William Blackham."

In March, 1890, the lands being vacant or about to be left vacant, Wood assumed possession of them in order to protect them. The tract was nearly all wild mountain forest, not susceptible of cultivation and only valuable for the prospective value of the timber. The taxes paid by Wood from that time on were about $400 a year, and he did not receive from the property $50 a year. Mrs. Blackham, a daughter of James Deskins, the original owner of the tract, by an understanding with the other owners, was entitled to a certain portion of the 5,185-acre tract, which upon survey was found to contain 1,500 acres, and by reason of this ownership was made a party to the contract of purchase by Wood and was entitled to receive $6,000. Of this amount Wood had paid to her $4,800, but could not pay her the balance, because of a dispute between her and the other owners as to the proportion of certain expenses in clearing the title for which they contended she was liable. She and her husband had executed a deed for her interest to Wood and left it in escrow with Mr. Shumate to be delivered when the balance due her was paid. On the same

date on which the $2,000 was paid to her, July 6, 1889, Wood had signed and delivered to her attorney a statement that there remained due to her about $1,500, "payable when title is perfected and suits finally disposed of." She did not at any time demand of Wood the payment of interest on her share of the purchase money, but at all times expressed her willingness to waive any claim to interest, but did dispute the claim made by the other owners that out of her share of the purchase money she should refund them certain expenses connected with clearing the title of suits and incumbrances.

There was considerable correspondence during 1896 and 1897 between the attorneys of the Deskinses and Mr. Wood, or his attorney, Mr. Asbridge, each urging the other to bring about a final settlement but without practical result. The attorneys for the Deskinses urged that Wood should pay the balance of the purchase money, and Wood urged them to put the title in proper shape to give him a deed clear of defects of title or incumbrances, stating that he was anxious to get a final settlement and a deed conveying the land to him; but as Mr. Wood lived in Philadelphia, and only occasionally came to West Virginia, and the Deskinses were scattered in different places, it did not seem easy for them all to get together or arrange a settlement. In June, 1897, Deskins' attorney made a claim for interest on the unpaid purchase money. Wood offered to pay the full amount of the purchase price upon getting a deed, but refused to pay interest.

Thereupon this suit for specific performance was entered in the United States Circuit Court for the Southern District of West Virginia, on September 14, 1897, and service of process was accepted by Wood, who was then in Philadelphia. The answer of Stuart Wood to the bill sets forth that the total purchase price was, as claimed, $24,490.45, on account of which he had paid to the vendors $13,600; that, except the first $3,000 mentioned in the contract, he was not by the contract required to pay anything more until the vendors conveyed to him a perfect title, by a deed with covenants of general warranty; that the vendors had never put themselves in condition to convey the land free from all incumbrances or defects of title, but had involved the respondent in various suits and litigation growing out of their transactions concerning said lands; that before the survey was completed the suits of Clay and Headley had been instituted to annul the said contract of sale to the respondent; that while that suit was pending, upon assurances that the litigation would soon be terminated and the vendors be able to carry out their contract, respondent, although under no obligation to do so, did on July 6, 1889, pay to the vendors $10,000, of which they have ever since had the use; that the litigation between Clay and Headley and the vendors did not terminate until October, 1894, since which time respondent has been endeavoring to get the Deskinses to comply with the contract, but they have refused, setting up claims against Mrs. Blackham which are denied by her; that the Deskinses had also refused to settle unless respondent would pay for another tract of land which they falsely claim respondent had also purchased; that during the time since he took possession the taxes have been about $400 a year, while he has received but a trifling rent or profit from the land, not exceeding $50 per year, while the vendors have had the use of the $10,000 paid in advance by respondent. He denied that any interest was chargeable against him, as the vendors had failed to perform their contract, as they had never tendered him a deed, and had kept him waiting for years without a title, so that he could not avail himself of the benefit of his purchase, although he had advanced to the vendors large sums of money and always had been willing and able and anxious to have a settlement. On June 12, 1899, the case was referred to a master, to report, among other things, what amounts were still unpaid and to whom payable. On October 12, 1901, the master, having taken a great deal of testimony offered by the parties to this case, made a comprehensive report of all matters referred to him. He reported: That the total purchase money for the several tracts amounted to $24,490.45, of which Mrs. Blackham was entitled to $6,000, less $500 which by agreement she was to contribute as her share of the cost of clearing up the title, and that she had been paid by Stuart Wood in all $4,800. That Wood had made to L. S. and W. H. Deskins the following payments:

April 12, 1889......................................................$ 1,000
July 6, 1889....................................................... 8,000
May 20, 1895, paid to Watts & Ashby on order of Deskins........... 300

Total paid Deskins.................................................$ 9,300
Paid Mrs. Blackham................................................ 4,800

     Total paid by Wood on purchase money.......................$14,100

He reported that Wood had also acquired liens on the property which the Deskinses should have satisfied out of the money paid to them by Wood, and which they failed to do. The liens were as follows:

Trust debt of Julia A. Sheppard.........................            $ 1,545 50
Interest from October 30, 1891, to October 30, 1901......$ 927 30
Trust debt of James Starr...............................            1,545 50
Interest from October 30, 1891, to October 30, 1901......  927 30
Judgment lien of James Starr............................            295 00
Interest from April 15, 1882, to October 31, 1901........  345 89

     Interest ......................................$2,200 49

     Principal ...................................................$ 3,386 00
     Interest .................................................... 2,200 49

     Total .................................................$ 5,586 49

The summary was as follows:

Due Mrs. Blackham, 1,500 acres at $4............................$ 6,000 00
Amount to be paid by Mrs. Blackham for costs, expenses of making
  title ........................................................ 500 00

                                                  $ 5,500 00
By amount paid ................................................ 4,800 00

Balance due Mrs. Blackham.......................................$ 700 00
Due L. S. and W. H. Deskins, 3,594 acres and 28¾ perches of land
  at $4 ......................................................$14,376 70
205 acres 110 perches of land at $20............................ 4,113 75
Amount charged to Mrs. Blackham for her share of costs, etc...... 500 00

                                                $18,990 45
Less amount paid ..................................$ 9,300
Less liens paid and interest.......................... 5,586 49    14,886 49

Balance due Deskins ........................................... 4,103 96
Balance due Mrs. Blackham..................................... 700 00

    Total amount to be paid by Wood October 1, 1901..........$ 4,803 96

The master denied the claim of Wood to be reimbursed for taxes paid on his lands since he took possession in 1890. The master reported that in his opinion Wood was not chargeable with interest on the balance of purchase money yet to be paid, because in the opinion of the master the "proof clearly establishes the fact that the vendors have not yet put themselves in a position to demand the payment of the purchase money." L. S. and W. H. Deskins excepted to the report, contending that the master should not have allowed Mrs. Blackham $6,000, but only on account of 1,317 acres at $4 per acre, amounting to $5,216, and that Mrs. Blackham should be charged with the proper proportion of the expenses incurred by the plaintiff and not limited to the sum of $500; that L. S. and W. H. Deskins were entitled to $4 per acre for 3,715 acres and 33¾ perches of land; that Wood should not have been allowed interest on the sums paid out by him for the liens on the land acquired by him; that Wood should be charged interest on the balance of the purchase money yet to be paid by him. Wood excepted to the master's report because he was not allowed reimbursement for the taxes paid by him, for the reasons

that circumstances under which Wood took possession were not such as required him to bear the burden of taxes.

These exceptions came on for hearing before the Circuit Court, and the court sustained the plaintiff's exception to so much of the master's report as found that the plaintiffs were not entitled to interest, and ruled that the plaintiffs were entitled to receive $9,490.45 from Wood as the balance purchase money unpaid March 1, 1890, with interest at 6 per cent. from that date until paid, less the payments made thereon with interest on the same, and less the valid liens purchased by Wood, with interest on the same until the day of settlement; the said balance due amounting on June 23, 1904, to $11,037.19. The court sustained the master's report that Mrs. Blackham was entitled to the purchase money for 1,500 acres of land at $4, and was only to be charged with $500 in favor of the Deskinses for expenses. The court decreed that it was the duty of L. S. and W. H. Deskins, upon payment of the money, to execute to Wood a good and sufficient deed of general warranty for the portion of the land owned by them, free from dower and all incumbrances, and that no such deed had been executed and delivered by them. The court found that a good and sufficient deed of general warranty had been executed by the Blackhams and had been delivered in escrow and was filed in the case, and that there was due her $1,200, of which $500 was to be paid to the Deskinses, and upon which, by an agreement made long after the date of the original contract, no interest was to be paid to Mrs. Blackham on her part of the purchase money, and upon payment of the said balance Wood was authorized to withdraw the deed from the papers in the case. The decree then provided that, unless the sums found to be due were paid within 30 days from the date of the decree, the lands in respect to which the balance due should be in default should be sold. Wood appealed and assigned for errors that the court had no jurisdiction, for the reason that Mr. and Mrs. Blackham were really coplaintiffs and were citizens of the same state with the defendant Wood; that no interest should have been allowed against him on any unpaid purchase money, because no proper deed had ever been tendered to him; that the taxes he had paid should have been allowed him; that the separate deed decreed to be delivered to him by the Deskinses and the Blackham deed were not in accordance with the contract; and that the court erred in decreeing costs against Wood, when the plaintiffs had been in default; and, having made unfounded claims for interest, the other exceptions had reference to the terms of the sale decreed to be made in default of payment of the balances found to be due.

Malcolm Jackson (Brown, Jackson & Knight, on the brief), for appellant.

L. D. Vickers and C. C. Watts (Watts & Ashby, on the brief), for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. The first assignment of error questions the jurisdiction of the Circuit Court because of an alleged want of diverse citizenship between the complainants and defendants, if, as contended by the appellant, they were properly arranged according to their actual interests in the controversy. As arranged in this suit as instituted, W. H. Deskins, L. S. Deskins, and Eva, his wife, were complainants and were all citizens of West Virginia, and the defendants were Stuart Wood, William Blackham, and Anne E. Blackham, his wife, all citizens of Pennsylvania. The defendant Wood, the appellant, urges that Mr. and Mrs. Blackham were not properly made defendants, but were parties in whose behalf relief was prayed against him, and that as joint vendors they were necessary parties. It is the

existence of a controversy between citizens of different states that is the test of jurisdiction. If the relief prayed cannot be granted without the presence of other parties, and if by placing them on the side of the case to which they belong the diverse citizenship is defeated, then the Circuit Court cannot take jurisdiction; but it is the nature of the controversy, the real matter in dispute, which should determine how the parties are to be arranged.

The bill of complaint prays a decree for the specific performance by Wood of his contract of purchase and a decree against him for the balance of purchase money due to complainants by said contract. The bill contains these averments:

"That the defendant Anne E. Blackham was the owner of 1,317 acres of the 5,032-acre tract, and that, while the purchase was made in the name of W. H. Deskins, he recognized her interest, and she is entitled to share to that extent in the sale, subject to an equitable adjustment between herself and the said W. H. Deskins as to the expenses incident to said property. But the plaintiffs are informed and so aver that the said Anne E. Blackham and William Blackham are unwilling to commence legal proceedings against the said Stuart Wood, and that they have expressed their willingness to receive from said Wood their part of the purchase money without any interest, rather than litigate the question of interest, and they have been paid the greater part of the amount coming to them and said Wood has executed and delivered to them his note for the balance due them. Plaintiffs are further informed and so aver that by deed dated the 6th day of July, 1889, said Anne E. Blackham and William Blackham conveyed their interest in said lands to the defendant, Stuart Wood, which deed was left by them with their attorney, W. K. Shumate, to be delivered to said Stuart Wood upon certain conditions, of the full nature of which conditions they are not advised. The plaintiffs have no authority to make said Blackhams plaintiffs in this suit, that there is no privity between the said Anne E. Blackham and William Blackham and these plaintiffs in the matters involved in this suit, but they are advised that it is essential to have the title to the property in controversy before the court, and they therefore designate and ask that said Anne E. Blackham and William Blackham be treated and made defendants in this suit."

The answer of Mrs. Blackham affirms the essential allegations of the bill so far as they relate to her controversy with the Deskinses and the absence of any controversy between her and Wood. She asserts in substance that W. H. Deskins and L. S. Deskins had agreed with her that she should have $6,000 out of the sale to Stuart Wood, and that she was not to pay more than $500 towards the expenses of clearing the title, but that they had somehow set up an unwarranted claim that she should pay one-third the said expenses, which exceeded $500, but had not allowed her one-third of the purchase money, and she avers that she believes but that for this unwarranted claim on the part of W. H. and L. S. Deskins she would have been able to settle with Stuart Wood long ago for her share of the purchase money as ascertained and agreed between all the parties as hereinbefore stated. She states that she has had some correspondence with said Wood, and he has stated that he was willing to settle with her in full and take her said deed; but on account of complications and disputes with W. H. and L. S. Deskins, he is afraid he might be required to pay some of the money a second time. She further avers that on account of the institution of this suit she will probably be kept for a long time from receiving her money, and prays she

may be allowed interest, and if the delay is held to be caused by Wood he may be decreed to pay interest to her, or if it is held to have been caused by the neglect, default, or unreasonable claims of W. H. and L. S. Deskins that they should be decreed to pay interest to her. It is quite obvious, we think, that the parties to this suit were arranged, not arbitrarily, but according to their real interest and according to their attitude towards the real, substantial controversy in suit.

It is urged, however, against the jurisdiction, that the decree of necessity had to be a decree in favor of Mrs. Blackham against Wood for the payment of the balance of the money due her, as well as in favor of the Deskinses, and that to speak of two persons, one of whom obtains a decree against the other, as being on the same side of a controversy, is an absurdity. But this is not necessarily so. Jones v. Bolles, 9 Wall. 364–369, 19 L. Ed. 734. In the case just cited the complainant, Bolles, a citizen of Massachusetts, was a stockholder in the Mineral Point Mining Company, a corporation of Wisconsin, and charged Jones, a citizen of Wisconsin, with setting up a fraudulent claim against the company to the injury of the corporation and its stockholders. Bolles and the mining company were made defendants. On the allegations of the bill, the decree of necessity had to be in favor of the mining company; but the Supreme Court, through Mr. Justice Bradley, said:

"It is next objected that there is a misjoinder of defendants by reason of making the mining company a party. But the company was directly interested, and though no relief is prayed against it, but rather in its favor, it is eminently proper that it should be made a party complainant or defendant. It could not be made complainant against its will, and, besides, its own agents joined in the fraudulent representations that were made. As a separate and independent personality, distinct from the stockholder interest, there was propriety in making it a party defendant."

The suit now under consideration is similar. There was no controversy between Mrs. Blackham and Wood, and she had refused to institute any suit against him. There was a controversy between Mrs. Blackham and the plaintiffs as to the share of the purchase money to which she was entitled and to the amount she should contribute towards expenses, and she claimed that if by the suit she was longer kept out of her money Deskins should pay her interest for the delay. It appears to us that the parties were arranged according to their actual interest in the controversy and that the Circuit Court rightly retained jurisdiction. Hotel Co. v. Wade, 97 U. S. 13-20, 24 L. Ed. 917; Einstein v. Ga. South. & F. Ry. (C. C.) 120 Fed. 1008.

The substantial question brought to us by this appeal is whether the plaintiffs have shown themselves to be entitled to interest on the unpaid purchase money. The court below sustained their claim for interest upon the ground that a purchaser who takes possession of land under a contract of purchase is liable for interest on the purchase money even though by reason of defects in the title he is delayed in getting a good deed of conveyance, unless the vendee sets aside the purchase money, and notifies the vendors that it is set aside, and that the vendee is not deriving any benefit from it. This rule is based upon the inequity of allowing the purchaser to enjoy the use of the

land, or the rents and profits of it, and at the same time have the use of the purchase money to the loss of the vendor. The vendor should as a rule have either interest on the purchase money or the rents and profits of the lands.

But when the reason of the rule, based upon the beneficial use of the land, fails, then the reason for allowing interest fails, and a court of equity should look carefully into the circumstances to ascertain what is equity under all the facts of the case. It appears this large tract of land which was the subject of the contract of sale was very nearly all wild mountain land, of no present beneficial use. It was of value solely because of the prospect that in the future, by reason of railroads which might be built, the forest trees would be marketable for lumber. The few acres of bottom land were but of little rental value, far short of enough to pay the annual tax of $400 a year. It is clear, therefore, that by taking possession Wood's pecuniary situation was made much worse, and if the vendors are to be allowed interest on the unpaid purchase money, which could not be safely paid to them on account of the condition of their title, then they will be decidedly better off, notwithstanding their defaults and delays, besides being relieved of the burden of the possession. It appears that whoever it was that was living on the land at the time of the sale moved away in March, 1890. Wood had then paid $13,000 on account of the full purchase price of $24,490. He had a very vital interest in protecting the property from depredations by intruders and from squatters. He testifies that he took possession solely for the purpose of protecting the property, and that the possession was of no pecuniary benefit, but entailed upon him expense; and it cannot be doubted that the fact was so. There is no reason, therefore, for applying the rule exacting interest from the purchaser, because of any beneficial use which he has enjoyed by reason of his possession.

It then remains to consider whether Wood at any time neglected to pay the purchase money when it was due and demandable, and for that reason is liable for interest as damages for his breach of the contract. There is nothing in the contract entered into by the parties in this case on April 15, 1889, to indicate that it was intended to be an exception to the usual understanding that a purchaser of land contracts for a good marketable title clear of liens and incumbrances, and is not compellable to pay the purchase price until the vendor tenders him such a title. It would require most explicit wording in a contract to express a different intention, so unreasonable and so contrary to ordinary usage in the purchase of land. By the contract it was stipulated that:

"Both of the said tracts or boundaries of land are to be surveyed so as to ascertain the acreage by the said party of the second part by the 15th day of May, 1889, by surface measurement. Their title thereto is to be perfected by the parties of the first part on or before the said 15th day of May, 1889. If the title to the said 150 or 200 acres cannot be perfected by that time, the same shall be so perfected within a reasonable time thereafter."

The agreement then recites the payment of $3,000 by Wood on account and that Wood has agreed to pay the balance on or before May

15, 1889, if the survey is then completed, and, if not, then when the survey is completed, which shall be completed as soon as it can by pushing the same with all reasonable dispatch. It then provides:

"And upon payment of the balance of the purchase money by said Stuart Wood, then said parties of the first part shall deliver a deed conveying said land with covenants of general warranty, free from all incumbrances or defects of title, including the release of the right of dower of the wife of James Deskins. A certificate of the clerk of the county court of Logan county showing the release of the liens against said lands shall be procured, and, if not, then the party of the second part shall retain sufficient of the purchase money to satisfy the liens against said land appearing on the records of said county."

An earlier clause of the contract, referring to the deed to be given by the vendors, stipulates:

"And if upon delivery of such a deed as hereinafter provided for said land, or for the boundary of 5,185 acres (if the title to the other is not then perfected), to said party of the second part, or the same be ready for delivery at the place of settlement above specified, and the balance of the purchase money is not then paid, this contract shall be void, and $1,000 part of the purchase money already paid shall be forfeited to the parties of the first part."

The above stipulations clearly indicate that what was contracted for was a perfect title, clear of liens and incumbrances. The survey, without which the amount of the purchase money could not be calculated, was not ready until June 25, 1889, but it was never suggested that Wood was in default for not having it completed sooner. Before a settlement could be had, or a deed such as the contract called for could be tendered by the vendors, it became obvious, not only that the property was deeply incumbered, but that legal proceedings had been instituted, which threatened to destroy all interest which the vendors had in it. It was a fact also that the 5,185-acre tract had been forfeited and sold for the taxes of 1885, and had not been redeemed within the year allowed by law, and it was not until January 15, 1897, that the forfeiture and sale was set aside by a decree of the county circuit court. The 5,185-acre tract in 1866 had been conveyed by James Deskins (Isabella Deskins, his wife, not joining) to L. S. Deskins, and L. S. Deskins had acquired the 200-acre tract by deed from W. H. Deskins and wife in 1882, and had given a deed of trust on that tract to secure about $2,000. In 1889 L. S. Deskins had conveyed 1,500 acres, a part of the 5,185-acre tract, to Mrs. Blackham. In 1886, the firm of Patton Bros., having a judgment against L. S. Deskins and a lien on the 5,185-acre tract, filed a bill of complaint in the Logan county circuit court and obtained a decree for the sale of said tract to pay the liens existing against it. Such proceedings were had that the 5,185-acre tract was offered at public sale by Shumate, commissioner, and April 1, 1889, was sold to L. S. Deskins' son, Wm. H. Deskins, for $15,000, of which $370 was paid in cash, and notes at one and two years given for the balance. On July 3, 1889, Clay & Headley filed their bill of complaint against L. S. Deskins, Wm. H. Deskins, Stuart Wood, W. K. Shumate, and others to set aside the sale made by Commissioner Shumate to William H. Deskins, alleging that Clay & Headley had by contract dated May 25, 1888, purchased the said lands

from L. S. Deskins for $3 an acre, and that the said sale by Commissioner Shumate had not been fairly made, but was so managed as to defeat the just rights of Messrs. Clay & Headley. A decree was entered October 19, 1889, setting aside the sale to Wm. H. Deskins, and this decree stood until reversed by the Supreme Court of West Virginia at the January term, 1892. Thereupon the said Clay & Headley filed a suit in equity in the Circuit Court of the United States for the District of West Virginia against the parties to this cause to require Wood to pay the balance of purchase money to the extent of the excess over $3 an acre to the said Clay & Headley. This suit was not finally decided until the mandate of this court was entered in the United States Circuit Court November 7, 1894.

It thus appears that by reason of the Clay & Headley suits not being finally disposed of until November, 1894, and the tax forfeiture and sale not until annulled by the decree of January 15, 1897, the vendors had not perfected their title as required to do by the contract of sale and could not deliver a deed free from incumbrances or defects of title until these serious defects, which imperiled their ownership of the property, were got out of the way.

Commissioner Shumate was authorized by a decree entered August 3, 1897, to execute a deed conveying the 5,185-acre tract to Wm. H. Deskins, and the deed of that date was executed. So far as appears, the vendors were then for the first time in a position (Wood having in the meantime bought up the liens and incumbrances) where they could "deliver a deed conveying said land with covenants of general warranty free from incumbrances or defects of title," as stipulated by them in the contract of sale. They did not tender such a deed to Wood, but on September 14, 1897, filed this bill, on which no decree was entered until June 23, 1904. It is significant that in their bill of complaint the plaintiffs carefully abstain from alleging that they have ever tendered a deed. They allege in general terms that they have been at all times ready and willing to comply with the terms of the contract, and have so notified Wood, but that he has failed and refuses to carry out the contract. They do not in their bill tender a deed, but ask for a decree for sale of the land to satisfy the balance of purchase due to them. When two acts are to be done at the same time, neither party can maintain a suit against the other without alleging a performance or an offer to perform on his part. Waterman on Specific Performance, p. 576, § 425, note; Id. §§ 443, 448; Barrett v. McAllister, 33 W. Va. 750, 11 S. E. 220; Watson v. Coast, 35 W. Va. 463, 14 S. E. 249; Clark v. Gordon, 35 W. Va. 735, 14 S. E. 255.

We are of opinion that until August 3, 1897, the vendors were unable to give a title free from defects, and for that reason there could not be any balance of purchase money due as to which Wood was in default for not paying. The contract does not provide for any credit. On signing the contract $3,000 was paid down, and the balance, when ascertained by a survey, was to be paid as soon as the vendors had perfected their title and tendered for delivery a good deed conveying a title free from defects. So long as such a deed was not tendered no money was due. Notwithstanding this Wood did pay,

July 6, 1899, $10,000, of which the vendors had the use·for about 16 years in advance of its being due to them, and this large sum was paid by Wood on a doubtful, litigated, and incumbered title, and during a long part of this period the vendors have had no title they could convey to Wood in gratification of the contract. That Wood under the contract was not in default in not paying until the title was perfected is corroborated by the receipts given to Wood when he made the large payment of $8,000 to L. S. Deskins and $2,000 to Mrs. Blackham. The receipt, signed by L. S. Deskins,. contains this statement:

"The balance of the purchase to be paid to and receipted for by me at a reasonable time after the disposition of the suit of Clay & Headley v. Deskins et al., and when the liens are removed from the land. The back taxes are to be paid by me out of the above amount."

L. S. Deskins was the substantial vendor, principally, if not entirely, owning the lands; his son, William H. Deskins, the formal purchaser at the judicial sale, being a youth of only 21 years and without property, and owing all the purchase money except about $270 paid to the commissioner. The receipt for $2,000, signed on the same day by Mrs. Blackham, is in the same language. In further corroboration is the fact that Mrs. Blackham has always refused to make a claim for interest as against Wood, and that no one of the Deskinses nor their attorney, during this long delay until June, 1897, ever suggested that interest was running against Wood.

It is urged, however, that without regard to the terms of the contract of sale, and without regard to the fact that there never was any default in payment by Wood, the fact that he took possession in March, 1890, is of itself sufficient to charge him with interest. As we have already said, it is not disputable that, when the premises were being vacated and left open to depredations, Wood took such possession as can be taken of a large tract of mountainous forest, simply to protect the land and timber, because of his own very large interest, arising from his having advanced so considerable a sum on account of the purchase money not yet due or properly payable. As there was no contract for interest, and the purchase money was not due, interest must be chargeable, if at all, upon a contract implied from the circumstances attending the transaction, and it does not appear to us that such an implication arises out of the possession of wild mountainous forest lands, taken under the circumstances of this case and entailing only burdensome expense on the party who goes into possession.

The equities of the case are by no means in favor of the vendors. Wood, before it was due, paid into their hands $10,000 on a doubtful, litigated, and incumbered title, and they have had the use of that money during this long time, in which they were slowly and intermittently perfecting their title in order to comply with their contract of sale, and during that time Wood had no title which he could convey, and only a burdensome possession. In Stevenson v. Maxwell, 2 Sandf. Ch. 273–278, which was a case of a vacant city lot, and where the vendor was in default in not perfecting the title, and in not ten-

dering a deed, the purchaser, although in possession, was held not to be chargeable with interest. The vice chancellor said:

"In the case of a vacant city lot or of wild land, not bought for immediate improvement or cultivation, and where there is no express contract for interest, it would be repugnant to the moral sense to compel the purchaser to pay interest on the price, where through the default or negligence of the vendor he had not received a conveyance and thus had been for years prevented from disposing of the property. Nor would the fact that the buyer had taken all the possession he could of such property, and had not kept the money by him all the time in order to pay it on receiving the title, affect the natural equity of the case."

We think the present case is a very strong one for the disallowance of the claim for interest, and in some respects a peculiar one, the facts of which forbid any implication of a contract to pay interest. It appears that in September, 1897, when the bill for specific performance was filed, the defects of title had finally been cured, the lien incumbrances had been taken up by Wood, and the vendors had it then in their power to tender a deed to Wood. But they did not do it, because of the disputes among themselves, and because of the demands by the Deskinses for interest. They made no tender of a deed, and no suggestion of any method by which the deed could be delivered and the disputed matters arranged. Wood kept writing to the Deskinses' attorneys that he was anxious and impatient to get a deed, that he was ready with the balance of purchase money, had already suffered by the Deskinses' delay, and could not pay interest when the matter had been delayed solely by the Deskinses' failure to carry out their agreement as to title. In our opinion there was no default by Wood up to the time of filing the bill in this case, and he was not then chargeable with interest as claimed by the Deskinses. There has been a long delay in the prosecution of the present suit, but it does not appear that it is attributable to Wood. In our judgment the defendant Wood is not liable for interest on the unpaid purchase money; and he is not entitled to interest on any sums he has paid out. He is not to be allowed interest on the taxes paid by him while in possession, or on sums paid by him to take up incumbrances, but to be allowed only the sums actually paid out by him as a credit on the purchase money. We are of opinion that under all the facts of this case there has arisen no implied obligation upon either party to pay interest to the other.

The taxes paid by Wood while he had possession are not to be allowed at all as a credit on the purchase.

The decree should provide that the vendors make good their contract by executing, to be delivered to Wood on payment of the balance found to be due, a good deed with covenants of general warranty, free from dower and all incumbrances, and that the balance found to be due be paid within a reasonable number of days after such tender, default in payment to be enforced by sale under direction of the Circuit Court and by its further order. This suit for specific performance has accomplished nothing except to settle the controversy betwen the Deskinses and Mrs. Blackham and to determine the question of interest on the purchase money in favor of the defend-

ant. Therefore, the complainants should pay the costs in the court below and in this court.

The decree below is reversed, so far as inconsistent with the rulings of this court as expressed in this opinion, and the case is remanded, in order that said rulings may be carried into effect by suitable orders and decrees.

Decree modified.