463 F.Supp. 510 (1978)
UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff,
v.
WELCO CONSTRUCTION & UTILITIES CO., INC., William E. Lawrence, Sr., and William E. Lawrence, Jr., and the Newberry County Water and Sewer Authority, Defendants,
v.
Arthur PODMORE and J. Walter Hamm, Defendants in Cross Complaint.
Civ. A. No. 77-728.
United States District Court, D. South Carolina, Columbia Division.
December 14, 1978.
*511 James L. Bruner, Jackson L. Barwick, Jr., Belser, Baker, Belser, Barwick & Toal, Columbia, S.C., David W. Robinson, II, Columbia, S.C., for plaintiff.
Joseph W. Hudgens, Pope & Schumpert, Newberry, S.C., for Arthur Podmore and J. Walter Hamm, Newberry County Water & Sewer Authority.
George Anthony Smith, Smith, Currie & Hancock, Atlanta, Ga., Herbert W. Hamilton, Whaley, McCutchen & Blanton, Columbia, S.C., for defendants Welco Constr. & Utilities Co., William E. Lawrence, Sr. and William E. Lawrence, Jr.
ORDER ON MOTION OF DEFENDANT NEWBERRY COUNTY WATER & SEWER AUTHORITY TO DISMISS THE COMPLAINT AND CROSS-CLAIM FOR LACK OF JURISDICTION
HEMPHILL, District Judge.
Motion of defendant Newberry County Water and Sewer Authority, (hereinafter called the Authority) to realign the parties and dismiss the cause for lack of jurisdiction, filed October 11, 1978, begs decision of this court. After review of memoranda submitted by the various parties, a hearing was held at Columbia, South Carolina, on November 15, 1978.
This action was originally lodged in the United States District Court for the District of South Carolina on April 22, 1977 by plaintiff, a Maryland corporation, and admitted surety on a Payment and Performance Bond to defendant Welco Construction & Utilities Company, Inc., (hereinafter Welco), a South Carolina corporation, previously admittedly engaged to construct, under a contract, the water line from U. S. Highway 76 in Newberry County, South Carolina, to and in the Town of Pomaria, Newberry County, South Carolina, for the use and benefit of the defendant Authority.
The complaint recites the residence of the parties, and alleges that although its principal, Welco, performed in a satisfactory manner, as accepted by the Authority, the obligations of the contract, that the defendant Authority claimed later that the contract was not performed as agreed upon, and under pretense that the contract was not complete, it first called upon the plaintiff, as surety, to complete the contract, later rejected the contractor that the plaintiff had hired to perform the necessary completion; thereafter, upon authority of the plaintiff, defendant completed a punch list of incomplete items with a contractor of the Authority's own choosing, leaving the sum of approximately $46,000 retainage in the Authority's hands. Plaintiff alleges that the Authority, although authorized by plaintiff and Welco to pay certain retainage claims, nevertheless failed and refused to apply the retainage sums in the hands of the Authority to satisfy the claims of Welco's creditors with the result that the claims have now been made against plaintiff as surety. The complaint further alleges that claims have been made against the plaintiff in the sum of $92,000 which plaintiff may be called upon to pay by virtue of Welco's alleged default. Defendants Lawrence are made parties to the suit by virtue of an admitted Master Surety Agreement, in which defendants Welco and the Lawrences agreed to save harmless and keep plaintiff indemnified against all claims, demands and suits arising out of a failure of performance. The prayer of the complaint asks for enforcement of the amounts due under the surety agreement, to require defendant Welco and defendants Lawrence to exonerate and indemnify plaintiff, and asking judgment against them for any losses sustained. The relief sought against the Authority was for an accounting as to all sums due and owning arising out of the contract or its alleged default. Plaintiff also asks for costs and disbursement for such other relief as the court might find proper.
The Answer and Cross-claim of the Authority, filed May 19, 1977, admits the contract with Welco, alleges that Welco abandoned the contract prior to completion and that at the time of the abandonment there remained incomplete work amounting to the sum of approximately $49,771.75 which was required to be expended by the Authority *512 to complete and repair the uncompleted work of Welco. Defendant Authority admits that upon plaintiff's agreement that defendant agreed to go ahead and complete the contract, which it did, and states that Welco incurred claims of over $100,000; it further alleges that it furnished to plaintiff all the records relating to disbursements, etc., and no further accounting is necessary. For a second defense, the Answer states that the complaint fails to state a claim under Rule 12, Federal Rules of Civil Procedure. The cross-claim of the Authority against the co-defendants Welco, as principal, and plaintiff as surety is for a total recovery of $61,905.30, consisting of the amount expended by the Authority in correcting and completing the contract of Welco in the sum of $43,855.30, and the amount of $18,050 by way of liquidated damages for failure by Welco to complete the contract within the contracted time.
The Answer of Welco, filed May 23, 1977, admits the existence of the contract with the Authority, the existence of the bond, the existence of the Master Surety Agreement, and in general the controversy allegations of defendant Authority's Answer. It further alleges that it owes plaintiff nothing and asserted in two counts a cross-claim against the Authority. The first count seeks recovery of the balance due it under the contract in the sum of $49,071.75 and $42,000 for additional work performed beyond that required under its contract, as demanded by the Authority, plus interest and cost. Count 2 of the cross-claim alleges fraud on the part of the Authority and asked for $1,000,000 damages. The defendants Lawrence are parties to the answer and cross-claim of Welco.
On June 3, 1977, plaintiff filed a reply to the counterclaim of the defendant Authority, generally denying the same and demanding strict proof thereof.
On June 3, 1977, defendants Welco and Lawrence filed an amended answer and counterclaim, and on June 8, 1977, demanded a jury trial. On June 9, 1977, defendants Welco and the Lawrences filed an answer to the cross-claim of the Authority. On June 15, 1977, the defendant authority answered the cross-claim of Welco and the Lawrences. On June 16, 1977, defendants Welco and the Lawrences filed a second amended answer and cross-claim against the Authority, which second amended cross-claim was answered by the Authority on June 22, 1977.
In April, 1977, Welco and the Lawrences were permitted to add Arthur Podmore and J. Walter Hamm as defendants in their capacities as manager and chairman of the Authority, respectively, in support of a third count in their cross-complaint for fraud in certain alleged representations as to available water supply. Such amendment, however, did not enlarge the parties since both Podmore and Hamm were sued in their representative capacities as officers of the Authority.[1]
Depositions of various officials of the Authority, Welco, William E. Lawrence, Sr., William E. Lawrence, Jr., and employees and representatives of U.S.F. & G. have been taken with respect to various claims of the parties, all of which indicate that the various claims of the parties were well-known to plaintiff prior to the commencement of this action.
The complaint would attempt to align the parties to the litigation by placing plaintiff, a resident (for jurisdictional purposes) of Maryland, on one side of the case and all defendants, residents of South Carolina, on the other, thereby presenting a controversy between citizens of different states, and sustaining diversity jurisdiction in the cause. The difficulty with this contention is that there is really no controversy between Welco, the Lawrences and plaintiff. The basic controversy in the action arises out of the cross-claim of the Authority *513 against Welco for breach of contract and against plaintiff as Welco's surety. There is no controversy between Welco and plaintiff. If Welco is successful either in its defense of the Authority's cross-claim or in the assertion of its cross-complaint against the Authority, plaintiff will prevail along with Welco. In essence, Welco and plaintiff stand together. Moreover, the two Lawrences are only interested in the controversy because they have signed an agreement with plaintiff to indemnify plaintiff if the latter is required to pay anything to the Authority under its surety bond. It is obvious, therefore, that the Lawrences have an identity of interest with the plaintiff and Welco.[2] Thus, when the controversy is carefully analyzed, it is manifest that the true alignment of the parties, based on their interest in the controversy, are the Authority on the one hand and Welco, the Lawrences and plaintiff, all on the other hand.
This principle is illustrated in Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47, reh. den. 314 U.S. 714, 62 S.Ct. 355, 86 L.Ed. 569 (1941). Chase, a New York corporation, instituted suit in the federal district court for the Southern District of Indiana against Indianapolis Gas Co. (hereinafter the Gas Co.), Citizens Gas Co. of Indianapolis (Citizens) both Indiana corporations, and the City of Indianapolis (City). Both the trial court and the Seventh Circuit sustained plaintiff's jurisdictional claim [28 U.S.C.A. § 41(1), now 28 U.S.C. 1332] but the Supreme Court of the United States reversed. The controversy arose out of a refusal of the City, in 1935, to admit as valid and binding, a 1913 lease by which Indianapolis, mortgagor to Chase to secure a 1902 bond issue, leased all its gas plant property to Citizens for a term of 99 years, the lessee agreeing to pay as rental (a) interest on lessor's outstanding bonded indebtedness, and (b) a sum equal to a 6% annual return on Indianapolis' common stock. Upon refusal of the City to honor the lease Chase sought by litigation to have the lease declared valid, that same be deemed part of the mortgage security, that the City be ordered to perform under the lease, etc.
Piercing through the veil woven by the pleadings Mr. Justice Frankfurter narrowed *514 the controversy to one question.[3] Finding Chase and Indianapolis "have always been united on this issue", and "partners in the litigation," and finding that Chase and Indianapolis were on the same side not only for their own purposes, but also for purposes of diversity jurisdiction, the court determined there was no such "collision of interests" as to constitute actual controversy, and that true diversity jurisdiction did not exist.
A similar ruling was made in State Farm Mutual Automobile Ins. Co. v. Hugee, 115 F.2d 298 (4th Cir. 1940) which was an action brought by a non-resident insurer seeking a declaratory judgment as to its liability under an automobile liability policy which it had issued to Patton's, Inc., one of defendants, a South Carolina corporation, whose laundry truck was involved in a wreck with the other defendants, who were expected to bring suit against Patton's for injuries and death of the driver in the bus owned by the other defendant. Of course, there was diversity of citizenship between the non-resident insurance company on one hand and Patton's, Inc., and the other defendants, all of South Carolina, on the other, but the court went on to elucidate in language which is apropos here:
It is perfectly clear from the face of the complaint that there is no controversy between plaintiff and Patton's, either as to plaintiff's liability for the claims or to its duty to defend suits for the enforcement. On the contrary, plaintiff had alleged that it is liable to the extent of its policy for any judgments which may be obtained on such claims and it may defend any suit thereon "even if such suit is groundless, false or fraudulent". The declaratory judgment, therefore, could not relieve plaintiff his duty defending suit against Patton's except the result of adjudicating the claims which are being asserted against Patton's, and, as we have seen there is no controversy as to these between plaintiff and Patton's.
The jurisdiction of a United States District Court is not derived from the Constitution of the United States, except indirectly by virtue of § 2 of Article III[4], as the Constitution grants the National Legislature the sole creative power over "such inferior courts as the Congress may from time to time ordain and establish."[5] It has generally been held that it is the duty of the court, in determining whether the requisite diversity of citizenship exists, to arrange the parties with respect to the actual controversy, looking beyond the final arrangement made by the complaint. 132 A.L.R. 193, 194.[6]
As we have already seen, the real controversy here is between the Authority, on the one hand, and plaintiff, Welco and the Lawrences, on the other hand, and, in order to determine diversity jurisdiction, the parties should be so aligned. When the parties are so aligned, it is clear that there is not complete diversity between the parties to the actual controversy and that there is no federal jurisdiction.
The action is accordingly dismissed for want of diversity jurisdiction.
AND IT IS SO ORDERED.
NOTES
[1] There is no reason to join Podmore and Hamm, individually, as it appears that the two named defendants on the cross-complaint were named as officers of the Newberry County Water and Sewer Authority which would be responsible for any of the activities acting in their official capacity. The court is somewhat at a loss to understand this fleeting maneuver, but it is not of any consequence in connection with the decision to be made here.
[2] Further examination by Mr. Barwick: (William E. Lawrence, Jr.)

Q. Mr. Lawrence, I want to change directions a little bit and refer briefly to the allegations of the suit brought by U. S. Fidelity & Guaranty Company against Welco, you, your father and the Authority and specifically in Paragraph 7 which is admitted in the pleadings. The allegation is that "Prior to and at the time of execution of the aforesaid bond Welco, by and through its president, William E. Lawrence, Sr., Defendants Lawrence did execute and deliver to the Plaintiff Master Surety Agreement whereby the above-named Defendants did agree to exonerate and indemnify and keep indemnified the Plaintiff Surety from and against any and all liabilities, losses and expenses of whatsoever kind of nature, including but not limited to, interest, court costs and counsel fees imposed upon, sustained or incurred by Surety by reason of (1) Surety having executed, provided or procured bonds in behalf of principal, or (2) undersigned's failure to perform or comply with any of the provisions of the Master Surety Agreement; that Welco and Defendants Lawrence further agreed that in order to exonerate or indemnify Surety, defendants would upon Surety's demand, place Surety in funds before Surety makes any payment:" A photocopy was attached to the pleadings. I hand you a photocopy of the Master Surety Agreement and ask if you recognize it and can identify the signatures on it?
A. Yes, sir, we signed this.
Q. I believe you admitted the existence of it in the pleadings stating that the agreement itself would be the best evidence of its terms. You understood, did you not, that as the consideration of USF&G furnishing the bonds to the Authority, your corporation and you and your father by signing the Master Surety Agreement agreed to pay USF&G any loss or expense incurred by reason of becoming your surety? Is that correct?
A. Yes, sir, that's what it says within the Surety Agreement.
Q. They weren't assuming your obligations, they were guaranteeing them, isn't that correct?
A. Yes.
* * * * * *
Q. And you recognize your obligation to pay the USF&G back?
A. Yes, sir.
Q. Either from the money you get from the Water Authority or other monies that you might obtain?
A. Yes, sir.
[3] "Is the lease whereby Indianapolis Gas in 1913 conveyed all its gas plant property to Citizens Gas valid and binding upon the City? This is the "primary and controlling matter in dispute." The rest is window dressing.
[4] "Section 2. The judicial power shall extend to all cases, in Law and Equitybetween citizens of different States."
[5] Article III, Sec. 1, United States Constitution.
[6] See cases cited in the Annotation in 132 A.L.R., including Wood v. Deskins, 141 F. 500 (4th Cir. 1905); Pac. R. Co. v. Ketchum, 101 U.S. 289, 25 L.Ed. 932 (1880), Removal of Cases (1879), 100 U.S. 457, 25 L.Ed. 593.